## THOMAS SPEIDEN v. THE STATE.

1. PETIT JURY — ORGANIZATION. — The defendant challenged for cause several of the regular panel, and then demanded that the panel be filled before he be required to make his peremptory challenges. *Held*, that, inasmuch as there was no residuum from which to supply the places of those challenged for cause, the court correctly required the defendant to proceed with those remaining.

2. SAME. — After all challenges there remained but eleven of the regular panel, and the court ordered the sheriff to supply the deficiency by summons of a person having the requisite qualifications. *Held*, to be in conformity with the provisions of the Jury Act.

3. EVIDENCE. — Experts are persons selected by courts or by parties litigant, on account of knowledge and skill, to examine, estimate, and ascertain things, and make report of their opinions. They are permitted to give in evidence their opinions, as well as the facts. The Code of this state expressly authorizes proof of handwriting by comparison made by experts or by the jury trying the cause. Pasc. Dig., art. 3132.

4. EXPERTS. — Experienced tellers of banking-houses, whose daily duties require them to pass upon signatures, etc., and who consider themselves qualified to judge of handwriting, are competent expert witnesses, under the Code, to prove handwriting by comparison. *Haynie v. The State*, 2 Texas Ct. App. 168, distinguished from the present case.

5. HEARSAY. — In a trial for burglary it was proved that several detectives had, as decoys for the accused, concerted with him to enter and rob a bank, and one of them was allowed, over objection, to testify what another told him the accused had said about the enterprise while concerting it. *Held*, that such testimony was but hearsay, and should have been excluded.

6. BURGLARY. — Certain bankers, apprehending an attempt by one S. to rob their bank, employed detectives, who, by authority of the bankers, decoyed him into the bank. *Held*, that the consent of the detectives to the entry of S. was the consent of their employers; and, therefore, however guilty his intent and purpose, his conviction for burglary is not sustained by the evidence or warranted by the law.

APPEAL from the District Court of Dallas. Tried below before the Hon. N. M. BURFORD.

In the opinion of this court will be found a remarkably lucid, though concise, statement of all the material facts. The jury awarded the defendant five years in the penitentiary.

*Thurmond, Willard & Fletcher,* for the appellant.

*George McCormick,* Assistant Attorney General, for the State.

WHITE, J.   In the view we have taken of this case, it is unnecessary to discuss the many interesting questions presented in the record, as they are not likely to arise upon a subsequent trial.   Most of the errors complained of have reference to the charge of the court and the refusal of instructions asked by defendant.

The points we propose to examine are (1) with reference to the manner in which the jury was passed upon and filled up, (2) the competency of the expert and hearsay testimony adduced, and (3) the sufficiency of the evidence to sustain the verdict and judgment.

1. The mode in which a jury is summoned and the jury list is returned by the sheriff is pointed out in section 9, chapter 109, of Acts of Fifteenth Legislature, page 171, in which it is provided that " the lists shall be returned by the sheriff on the first day of the term, with a certificate thereon of the date and manner in which each juror was summoned; from each of which lists thirty persons, more or less, as the judge may direct, shall be selected, for the week named in the list, from those summoned and in attendance, and not excused by the judge in open court, in the order in which their names appear therein, who shall compose the regular panel for that week."   The names of these jurors are written upon slips of paper and placed in the box, which is then well shaken up; after which they are drawn out and written upon two lists, one for the prosecuting attorney and the other for the defendant.   After their challenges for cause, each party can then, from those remaining, exercise his peremptory challenges by striking their names from the list.   The statute provides as follows :

" But, before either party shall be required to strike, those on the lists shall be challenged for cause, and others drawn, and placed, as drawn, upon the list, in place of as many as may be set aside for cause." Acts Fifteenth Legislature, 82, sec. 22.

In this case defendant challenged six jurors, for cause, out of twenty-four called. He then asked to have the jury filled up with six jurors in place of those set aside; which was refused, because the twenty-four names drawn exhausted those in the jury-box, and there were none left in the box from which to supply the places of those challenged. Eleven men were then selected from the eighteen remaining. We do not think the court erred, under the circumstances, in requiring the parties to proceed to strike from the eighteen names remaining, since there were none left to be drawn from the box in lieu of those challenged for cause.

After the eleven were selected, as above stated, the court ordered the sheriff to summon another to complete the jury. This was not error, but was in conformity with the practice provided in the statute, which is as follows:

" When, from any cause, it may be necessary to make up a jury, if there be not enough of the standing jurors remaining, or in attendance, the court shall order, for the occasion, a sufficient number of other jurors, possessing all the qualifications prescribed for jurors in this act, to be summoned by the sheriff to make up the deficiency in said jury," etc. Acts Fifteenth Legislature, 82, ch. 76, sec. 22.

2. With regard to the competency of the evidence.

Two witnesses were introduced, as experts, by the state, to compare the signature of defendant to an affidavit for attachment, which was proven to be genuine, with other letters and writings in evidence, and to express their opinion, after comparison, as to whether or not the letters and other writings were the handwriting of the defendant. Our statute providing for this mode of proof reads as follows:

" It is competent, in every case, to give evidence of handwriting by comparison made by experts or by the jury," etc. Pasc. Dig., art. 3132.

" Experts are persons who are selected by courts, or the parties in a cause, on account of their knowledge or skill, to examine, estimate, and ascertain things, and make report of their opinions." 1 Bouv. L. Dic. They "may not only testify to facts, but are permitted to give their opinions in evidence." 1 Greenl. on Ev., sec. 440.

In this case it is objected that the witnesses testifying did not qualify themselves as experts. We do not think the objection tenable. They were both tellers of banking-houses in the city of Dallas, one having had four years', and the other two years', experience in such position, where they were daily passing upon the genuineness of signatures and paying hundreds of checks, and both thought themselves experts and competent to judge of handwriting. We think the testimony was competent and admissible. This case is distinguished from the case of *Haynie* v. *The State*, 2 Texas Ct. App. 168, in that, in the latter case, the comparison of the handwriting was not sought to be established by experts or the jury, as provided in the statute, article 3132. In Haynie's case it was held that the same rule as that established in civil cases would control. *Hanley* v. *Gandy*, 28 Texas, 211.

The evidence objected to in the twelfth, thirteenth, and fourteenth bills of exception was hearsay evidence, and clearly inadmissible. The witness was permitted to testify what a detective told him the defendant said. We know of no rule of law which would allow such evidence, and the court erred in not sustaining the objections raised to it.

3. The last, and, in our estimation, the most important, proposition to be considered is whether or not the evidence is sufficient to warrant the verdict and judgment when ap-

plied to the law applicable to the case.   As disclosed in the record, the facts are substantially as follows :

Pinkerton's detective agency, at Chicago, Illinois, obtained, by some means, a number of letters and postal cards written by the defendant, from Dallas, to a friend in Chicago, urging him to come to Dallas and join him in breaking into and robbing some of the banks in the latter city.   It appears that Pinkerton forwarded those letters to John Kerr, a banker of Dallas, who immediately called a meeting of the bankers of the city and submitted the matter to them. The result of this meeting was that the bankers requested Pinkerton to send a detective to Dallas to work up the case. Deroso, a sergeant of Pinkerton's force, came, and, after an interview with the bankers, sent back to Chicago for Wood and McGuire, two detective aids, who were to represent themselves to the defendant as professional burglars, and induce him to enter some bank building in the night-time, when they would procure his arrest.

After the arrival of Wood and McGuire, they set to work to carry out this plan, keeping in constant communication with Deroso, and, through him, with the bankers, who were kept constantly informed as to the plans and movements of the parties.   Finally, it was agreed on all hands that the banking-house of Adams & Leonard should be broken into on Sunday night.   Adams & Leonard agreed to the arrangement, and the detectives were, in the adventure, working in their employ.

Pursuant to the plan agreed upon, Deroso, Hereford, a deputy sheriff of Dallas county, a Mr. Mixon, United States deputy marshal, and another party, entered and took possession of the bank during the day-time, about two or three o'clock on Sunday, to remain therein until the burglary was effected and the defendant was arrested.   About one o'clock at night the back door of the bank was forced open by the

two detectives, Wood and McGuire, who came in, spoke to the concealed parties, and went into the vault; when, after remaining about an hour, Wood went out, told Speiden, the defendant, they wanted more help, and returned in a short time, and, coming in, closed the door after him. In a minute or two Speiden came in and closed the door, when the officers arrested him.

Now, as to the law of the case: To our minds it is clear that Deroso and the other detectives were the servants and agents of Adams & Leonard, and had full authority to consent to defendant's entry into the bank, and that his entry was not only with their consent, but at their solicitation. The case is somewhat like that of a man being robbed by his own consent, although the supposed robbers did not know of the consent. Reanes' Case, 2 East, 734; McDaniel's Case, Fost. 121.

In Tennessee, where the prisoner had arranged with a negro, during the days of slavery, to steal him, and the negro informed his master, who told him to carry out the agreement between the prisoner and himself, which was done, and the prisoner was arrested in the act, it was held that, to constitute larceny of a slave, it must appear that the accused had possession of the slave, and that the possession was obtained without the consent of the owner. *Kemp* v. *The State*, 11 Humph. 320.

Mr. Bishop says: " The cases of greatest difficulty are those in which one, suspecting crime in another, lays a plan to entrap him; consequently, even if there is a consent, it is not within the knowledge of him who does the act. Here we see  * * * that, supposing the consent really to exist, and the case to be one in which, on general doctrines, the consent will take away the criminal quality of the act, there is no legal crime committed, though the doer of the act did not know of the existence of the circumstance which prevented the criminal quality from attaching.  * * *

A common case is that of burglars who, intending to break into a house and steal, tempt the servant of the occupant to assist them; and the servant, after communicating the facts to his master, is authorized to join them in appearance. Under such circumstances, clearly, the burglars are not excused for what they do personally; but, it seems, if the servant opens the door while they enter, they are not held criminal for this breaking thus done by the servant, acting under command of the occupant of the house broken." 1 Bishop's Cr. Law, sec. 262; see, also, sec. 263.

The case of *Regina* v. *Johnson and Jones*, 1 Car. & M. (41 Eng. C. L. R.) 123, is in point. In that case the court say: "Cole, the groom, it is true, appeared to concur with the prisoners in the commission of the offense. But in fact he did not really concur with them, and he, acting under the direction of the police, must be taken to have been acting under the direction of Mr. Drake, the prosecutor. Under the circumstances of this case the prisoners went into a door which, it seems to me, was lawfully open. Therefore neither of them was guilty of burglary."

In Egginton's case, which is also in point, it was held "that no felony was proved, as the whole was done with the knowledge and assent of Mr. Bolton, and that the acts of Phillips ( the servant ) were his acts." 2 East, 666.

Another case in point is *Allen* v. *The State*, the substance of which is that, "when the proof showed that the prisoner proposed to a servant a plan for robbing his employer's office at night; that the servant disclosed the plan to his employer, by whom it was communicated to the police; that the master, acting under the instructions of the police, furnished the servant with the keys of his office on the appointed night; that the servant and the prisoner went together to the office, when the servant opened the door with the key, and both entered through the door, and were

arrested in the house by the police; held, that there could be no conviction of burglary.'' 40 Ala. 344. See, also, 2 Whart. Cr. Law, sec. 1540; Roscoe's Cr. Ev. 345.

In the case at bar the detectives cannot be considered in any other light than as the servants and agents of the bankers, Adams & Leonard. They, the detectives, had the legal occupancy and control of the bank; two of them made arrangements with defendant to enter it; and defendant, when arrested, had entered the bank at the solicitation of those detectives, who were rightfully in possession, with the consent of the owners. This cannot be burglary in contemplation of law, however much the defendant was guilty in purpose and intent.

The judgment of the lower court must be reversed and the cause remanded.

*Reversed and remanded.*