### DALTON v. THE STATE.

A person who has formed an intention to commit a crime, and who, unaided by any one else, performs acts which make the offense complete, will not be excused by reason of the fact that another, with the consent and approval of the victim of the crime, was present aiding in and encouraging its commission. It would be otherwise if such a person originated the intention to commit the crime or induced its perpetration.

Argued May 20,—Decided July 22, 1901.

Indictment for attempt to wreck train. Before Judge Russell. Gwinnett superior court. March 23, 1901.

J. T. Patterson and John Dalton were indicted for attempting to wreck a railroad-train. Dalton was tried and found guilty; and his motion for a new trial, upon the general grounds, having been overruled, he excepted. The following appears from the evidence: On October 20, 1900, Patterson went to the agent of the railway in Lawrenceville and told him of a plot to wreck a train. The agent reported the matter to the superintendent, who sent an inspector to Lawrenceville on the next day. Patterson was sent for, and he told this inspector that there was a plot to wreck a train on the river trestle, with the object of robbery; that Dalton was the other man, and was the leader; that he and Patterson were to divide the money; and that it was arranged for the night of October 27. After dark on that day, this inspector went to the trestle, accompanied by Byrd, Oakes, and Haslett, the sheriff. Two of them were stationed at one end of the trestle, and two went to the other end. Patterson and Dalton soon afterwards came upon the trestle and began to knock on the rails. Then they went to the other end, came back, and began knocking or prizing at the rails. They were arrested, and upon the trestle was found a block of wood

between three and four feet in length, ten or twelve inches square, and weighing about seventy-five pounds, with a wedge in the center of it. This block was between the rails, with the wedge down between the cross-ties. The block extended above the rails high enough to be struck by the pilot of a locomotive, and would derail the train. Both Patterson and Dalton were knocking the rails when the others came upon them, one using a crowbar and the other a rock. One of the taps of a bolt that held the fish-bar had been run off several rounds. The trestle was 450 feet long, and about 150 feet high. When Patterson and Dalton were taken, Patterson said he was a track-hand, and Dalton said he had started to Gloster for cheese for his sick brother, and met Patterson there. This was about half an hour before the time for a passenger-train to arrive. There was testimony that Dalton was ignorant, weak-minded, easily influenced, etc., but that he knew right from wrong, did farm work, made his own settlements, and received the proceeds of his labor. It was also testified that, though ignorant, he was a boy of sense. While in jail he voluntarily told a witness that he went to the trestle with Patterson for the purpose of wrecking the train ; that Patterson persuaded him into it. His statement at the trial was : " I did not attempt to wreck any train. I did not go there for that purpose, but simply went down with Patterson at his request. I had nothing to wreck a train with."

*O. A. Nix,* for plaintiff in error.
*C. H. Brand, solicitor-general,* contra.

COBB, J. When one is informed that another intends to commit an offense against him or his property, the law permits him to afford opportunities for its commission and lay traps which may result in the detection of the offender. To this end he may employ another to act with the intending criminal and be present with him at the time the crime is to be committed; and if the intending criminal does himself acts which would constitute the offense, he will not, when charged with the crime, be protected from punishment by reason of the fact that, at the time the criminal act was performed by him, another, who was there with the knowledge, consent, and approval of the victim and even by his direct employment, aided in and encouraged its perpetration. In such a case, however, it must appear that the person charged with the offense

did himself everything necessary to make out a complete offense against the law. Nothing that was done by the person present with the knowledge and consent of the victim will be imputed to the accused; and if, in order to constitute the offense, it is necessary that something done by such person shall be imputed to the accused, then the prosecution will fail. Or, if it appears that the intent to commit the crime did not originate with the accused but was suggested by the person present with him, with the knowledge and approval of the victim, the prosecution will likewise fail. See *Williams* v. *State*, 55 *Ga.* 391; *Varner* v. *State*, 72 *Ga.* 745; State *v.* Jansen, 22 Kan. 498; Speiden *v.* State, 3 Tex. Ct. App. 156, s. c. 30 Am. Rep. 126, 129, note; 1 Whart. Cr. L. (10th ed.) § 149 et seq.; 1 Bish. New Cr. L. § 262 et seq.; 25 Alb. Law J. 184.

Applying these principles to the facts of the present case, a jury would be authorized to find that the plan to wreck the train originated with the accused; that while Patterson was present at the time the alleged attempt to wreck the train took place, with the knowledge, consent, and approval of the railroad company, and did himself certain acts which would amount to an attempt to wreck the train, the accused, independently of what Patterson did, performed acts which in themselves would make him guilty of a complete attempt to wreck the train. As a finding to this effect was authorized, the verdict can not be said to be unsupported by evidence, although there was evidence from which the jury might have come to a contrary conclusion. There was no error of law complained of, and the discretion of the trial judge in refusing to grant a new trial will not be controlled.

*Judgment affirmed. All the Justices concurring.*