## STRADER v. UNITED STATES.
### No. 1014.

Circuit Court of Appeals, Tenth Circuit.
Aug. 23, 1934.

Charles H: Garnett, of Oklahoma City, Okl. (C. F. Miller, of Oklahoma City, Okl., on the brief), for appellant.

D. E. Hodges, Asst. U. S. Atty., of Oklahoma City, Okl. (William C. Lewis, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

Appellant, a licensed and practicing physician at Oklahoma City, duly registered with the collector of internal.revenue for the district of Oklahoma, was prosecuted under the Harrison Anti-Narcotic Act, as amended. 26 USCA § 696. The indictment contained eleven counts. Each count, except the eighth to which reference will be presently made, charged a sale of morphine sulphate by means of a prescription not issued in good faith and subsequently filled at a drug store. He was convicted on the first, second, third, seventh, eighth, and eleventh counts, and acquitted on the others. Punishment was fixed at eighteen months in the penitentiary and a fine of $250, on each count upon which he was convicted, with provision that the several sentences of confinement should run concurrently. An appeal seasonably perfected brings the case here on review.

A demurrer, interposed to the indictment and the several counts thereof, was overruled. The eighth count charged that appellant wrote a prescription for Clara Robinson with the intent then and there on his part that she should obtain the drug from a druggist·upon presentation of the prescription, but it failed to charge that she did in fact obtain the drug from any source. It differs from the other counts in that respect. The mere writing of a prescription with the intent and purpose that the person to whom it is given will obtain a drug is not a violation of the statute. Acquisition of the opiate is required to constitute the completed offense. Aiton v. United States (C. C. A.) 3 F.(2d) 992. The eighth count failed to charge an offense, and the demurrer should have been sustained as to it.

The seventh count charged a sale to Clara Robinson. The undisputed proof showed that the sale was made to her husband. He received the prescription and obtained the drug.

She did neither. There was a fatal variance between the charge and the proof, and for that reason the motion for a directed verdict of not guilty should have been sustained as to that count.

 Roy F. Bridgess, a federal narcotic agent, obtained three separate prescriptions from appellant. They form the bases for counts 1, 2, and 3 in the indictment. His testimony that he had advance information respecting appellant's sale of prescriptions, obtained through conversations with addicts, is challenged as being hearsay. The court asked the question through which the testimony was elicited, and explained at the time that it was for the purpose of ascertaining whether entrapment was involved. The witness did not detail the statements made to him. He merely said that he had advance information relating to sales. The truth of the information was not an issue, nor was it drawn in question. Whether he received it was a proper subject of proof for the sole purpose of determining whether those sales were made in consequence of a decoy to ensnare appellant, if he were otherwise innocent, into the commission of a crime. Such a question may be investigated on the court's own motion at any stage of the proceedings because proof of its existence requires that the prosecution be ended, as it is against public policy to convict one upon proof obtained in that manner, and, if the court is in doubt, the issue may be submitted to the jury. Sorrells v. United States, 287 U. S. 435, 53 S. Ct. 210, 77 L. Ed. 413, 86 A. L. R. 249.

 The court admitted testimony from several witnesses that appellant had furnished them prescriptions other than those described in the indictment, without making any physical examination. Other testimony was admitted tending to show that he had written an excessively large number of prescriptions during the two years immediately preceding his arrest and that he made certain statements concerning them at the time he was arrested. All that evidence is assailed as being foreign to the matters in judgment and prejudicial. Appellant admitted that he gave the several prescriptions set forth in the indictment, but contended that they were issued in the course of his bona fide professional practice, thus placing his good faith squarely in issue. The court expressly limited the testimony of which complaint is now made to its bearing upon his credibility as a

witness and the good faith or lack of it with which he issued and sold the prescriptions in question. Ordinarily, proof of other independent offenses is not admissible on the trial of a criminal case, but, if the intent with which the act charged in the indictment was committed becomes an issue, evidence of other similar offenses is proper because it bears upon the intent of the act in question. Wood v. United States, 16 Pet. 342, 10 L. Ed. 987; Butler v. United States (C. C. A.) 53 F.(2d) 800; Minner v. United States (C. C. A.) 57 F.(2d) 506; Samuels v. United States (C. C. A.) 232 F. 536, Ann. Cas. 1917A, 711. The testimony threw light upon appellant's intent; that is, whether the prescriptions were supplied in the legitimate practice of his profession or for the commercialized sale of narcotics, and was correctly admitted. Dysart v. United States (C. C. A.) 270 F. 77, certiorari denied 256 U. S. 694, 41 S. Ct. 535, 65 L. Ed. 1175.

 After testifying that he examined the several persons named in the indictment, that in his opinion they were suffering with disease, and that the prescriptions were given to relieve their condition, appellant submitted testimony of three physicians that, in the circumstances shown by his records—called history cards—they considered the prescribing of morphine good professional practice. One of them was asked whether in his opinion one addicted to the use of morphine is a diseased person. The court declined to permit the question to be answered, and observed that the statute prescribes the diseases for which morphine may be prescribed, that it expressly provides that merely being an addict is not a disease, and that the question was not one for expert testimony. Another was asked whether he considered it good professional practice to prescribe ten grains of morphine for a patient upon his first call at the office and upon his statement that he had been using only two or three grains daily. The court sustained an objection, and stated again that the circumstances under which morphine could be supplied was one of law, not for expert opinion. The third testified that he considered addiction to the use of morphine a disease and that it is accompanied by pain. He then was asked whether in his opinion such pain would warrant the administering of morphine for its relief. Upon objection, the court stated that the witness might answer the question, but that the jury would be instructed that administering morphine under

592

such circumstances is prohibited by law; that the statute specifically provides that it may not be given merely for the purpose of relieving pain incident to the condition of an addict. We think the court incorrectly stated the law and unduly circumscribed the testimony. The statute does not prescribe the diseases for which morphine may be supplied. Regulation 85 issued under its provisions forbids the giving of a prescription to an addict or habitual user of narcotics, not in the course of professional treatment, but for the purpose of providing him with a sufficient quantity to keep him comfortable by maintaining his customary use. Neither the statute nor the regulation precludes a physician from giving an addict a moderate amount of drugs in order to relieve a condition incident to addiction, if the physician acts in good faith and in accord with fair medical standards. Linder v. United States, 268 U. S. 5, 45 S. Ct. 446, 69 L. Ed. 819, 39 A. L. R. 229; Boyd v. United States, 271 U. S. 104, 46 S. Ct. 442, 70 L. Ed. 857; Thompson v. United States (C. C. A.) 258 F. 196. Expert testimony with respect to recognized medical standards and methods of treating patients, such as those for whom the prescriptions were furnished, was admissible because of its bearing upon the intent and purpose with which the prescriptions were issued. If appellant's conduct conformed to fair medical standards, it would indicate good faith; if not, it would suggest the dispensing of narcotics for commercial purposes.

█ Bridgess, testifying with respect to the three sales made to him, stated that he was not an addict and did not say or indicate on any of the occasions in question that he was; that he told appellant he wanted a prescription; that no physical examination was made of him; and that the prescription was readily furnished on payment therefor at the rate of $1 per grain. On the other hand, appellant testified that at the time Bridgess came to his office on the first occasion he was in a serious physical condition, unshaven, unkempt, nervous, and with water running from his eyes; that a careful physical examination was made of him, having particular reference to his pulse, heart beat, and nervous reflexes; that he said he was an addict and used about two grains of morphine daily, and that he was in great bodily pain; that in appellant's belief it was necessary to provide morphine by means of the prescription in order to relieve his suffering; and that the two subsequent prescriptions were furnished to relieve a like condition. Predicated upon the issue of fact thus raised with respect to the good faith or lack of it with which the prescriptions were delivered, the court instructed the jury as follows:

"You are further instructed that it is permissible for an officer of the law engaged in this character of investigation to utilize addicts; that is, that class of people who purchase morphine, and the court instructs you as a matter of law that Bridges had the right to utilize Blanche Baker in the manner he did to seek an introduction to the defendant, and you are also instructed that he had the right, having been advised that the defendant was engaged in the sale of narcotic prescriptions in violation of the laws of the United States, to offer an opportunity to the defendant to violate the law if the defendant was engaged in that character of dispensation of narcotics, and the fact that Bridges 'offered the defendant, even under an assumed name, an opportunity to violate the law, if the design and purpose had already been formed in the mind of the defendant to illegally dispense morphine, and the fact that Bridges offered him this opportunity would not be considered, as a matter of law, an entrapment.'

"What purpose would Bridges have, then, for making a false statement? The maintenance of his position does not depend on his making false statements, and you may therefore give to the testimony of Bridges the same weight and credibility that you would give any other person under similar circumstances, and it is for you to determine whether or not you will believe the statements made by Bridges and corroborated by Blanche Baker are true. On the other hand, you may, in giving consideration to the weight and credibility of the testimony of the defendant, you may consider the fact that he is defendant in this case. 'He has the legal right to be heard in his own behalf and it is your duty to give to the testimony such weight and credibility as you believe, under all the circumstances, it is entitled to, but, as indicated above, you may take into consideration the fact that he is the defendant, and that he is charged with a serious offense, and you may consider whether or not, if the defendant is not guilty, what statement he would likely make, and on the other hand, you may take into consideration the fact that if he were guilty, what kind of a statement he would make, and is his interest in this case

such as would lead him to make an untrue statement to secure his acquittal.' "

The instruction went an arrow's flight beyond the permitted bounds of fair and helpful analysis of the evidence or comment upon it as an aid to the jury in arriving at a just verdict. It singled out the testimony of Bridgess and told the jury that there was no motive for him to testify falsely, that there was such a motive on the part of appellant, and it was intimated in a pointed way that for such reason false testimony might be expected from him. That was argumentative and prejudicial. Minner v. United States, supra; Yoder v. United States (C. C. A.) 71 F.(2d) 85; Quercia v. United States, 289 U. S. 466, 53 S. Ct. 698, 77 L. Ed. 1321.

It is urged that the error cannot be reviewed because a proper exception to the instruction was not taken. A general exception was taken to the charge as a whole, but no special exception was directed to any particular part of it. Ordinarily alleged errors occurring during the trial of a criminal case must be appropriately called to the attention of the trial court, thus affording an opportunity to correct them; otherwise they are not reviewable on appeal. And as a part of that rule a general exception to a charge which fails to challenge a particular part or parts of it to which objection is subsequently made is insufficient. Holder v. United States, 150 U. S. 91, 14 S. Ct. 10, 37 L. Ed. 1010; Stassi v. United States (C. C. A.) 50 F.(2d) 526. But an appellate court may correct a serious error involving the life or liberty of an accused in a criminal case, although the error was not challenged and preserved for review by proper objection, exception, or assignment. Williams v. United States (C. C. A.) 66 F.(2d) 868. If appellant issued the prescriptions in good faith as a physician, believing Bridgess to be a bona fide patient, for the purpose of curing disease or relieving suffering, he was not guilty. Boyd v. United States, supra. His own testimony was submitted in an effort to establish that fact, and, in the very nature of things, it was the focal point of his defense. The instruction segregated the testimony and emptied it of effect. We think the error was sufficiently serious that it should be corrected, even though no specific exception was taken at the time.

Other procedural questions are argued. We have examined them and believe they present no merit. The judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.