## MacLAFFERTY v. UNITED STATES.
### No. 7762.

Circuit Court of Appeals, Ninth Circuit.
May 20, 1935.

W. H. Abel, of Montesano, Wash., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Owen P. Hughes, Asst. U. S. Atty., of Tacoma, Wash.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant was convicted under two of the three counts of an indictment predicated upon a violation of the Harrison Anti-Narcotic Act (38 Stat. 785, 786, § 2, and § 1, as amended by 40 Stat. 1130, § 1006, as amended, [26 USCA §§ 692–696]).

Count I, omitting the formal allegations of jurisdiction, charged that appellant, on the 29th day of May, 1934, being a physician duly registered under the above-referred to acts, did knowingly and unlawfully sell, barter, and dispense to one Walter G. Graben, a compound, manufacture, and derivative of opium, to wit, approximately ½ oz. of tincture of opium, to wit, laudanum, not in pursuance of a form issued for that purpose by the Commissioner of Internal Revenue of the United States, and not in good faith and in the course of his professional practice only; the said sale, bartering, and dispensing being through a written order to the said Walter G. Graben in the form of a prescription, which prescription called for delivery to "Ellen Gray" of the amount of drugs described. That the said Bernard N. MacLafferty intended that the said Walter G. Graben should obtain, on behalf of the said "Ellen Gray" upon said order, drugs of the amount and kind above described. That the said Walter G. Graben did not require the administration of said drugs for the treatment of any disease or malady. That the said appellant dispensed said drugs to satisfy the narcotic cravings of a nonexistent and fictitious person, to wit, "Ellen Gray," represented by the said Walter G. Graben to be a narcotic addict; that the drugs so dispensed by the said appellant were in the form in which said drugs are usually consumed by persons addicted to the habitual use thereof to satisfy their cravings and were adapted to such consumption.

Counts II and III are in the same form as stated above, except that count II charges that the offense was committed on the 1st day of June, 1934, and that the prescription was delivered to Walter G. Graben and issued to "Frank Gray," a nonexistent and fictitious person.

Count III charges that the offense was committed on the 7th day of June, 1934, and that the prescription was delivered to Walter G. Graben in the name of one "John Harrison," a nonexistent and fictitious person.

The government's case in chief consisted of the testimony of Walter G. Graben, a narcotic agent, and Harry V. Williamson, Assistant District Supervisor of Narcotics. This testimony reveals that on the 29th day of May, 1934, Agents Graben and Williamson proceeded to Aberdeen, Wash., where appellant was engaged as a practicing physician. Agent Graben entered appellant's office alone, Agent Williamson remaining outside the building in which appellant's office was located. Mr. Graben informed appellant that he had a woman named "Ellen Gray" over at the Colby Hotel who was an addict and requested a prescription of laudanum for her. Graben testified that appellant "questioned me somewhat about her, and then he wrote a prescription * * *" to her for 2 oz. sweet oil and ½ oz. laudanum, with directions "5 drops warmed and dropped in the ear for pain." Appellant delivered this prescription to Graben, who paid him $2. There was nothing said about where he was to get the prescription filled, but upon the back of the prescription was a printed name and address of Monarch Drug Company, Aber-

deen. Graben turned the prescription over to Agent Williamson, after leaving appellant's office. Williamson took the prescription to the Heikel Drug Store in Aberdeen, Wash., and was furnished a bottle containing 2 oz. sweet oil and ½ oz. laudanum.

On June 1, 1934, Agent Graben again went to appellant's office, Agent Williamson having stationed himself a short distance from the main doorway on the outside of the office building. Graben informed appellant that he had come for another prescription; that the first prescription had been exhausted. Appellant asked the agent if he would object to the use of his name in the prescription. Agent Graben informed appellant that he would have no objection to the use of his name, and informed the appellant that his name was "Frank Gray." Appellant then wrote a prescription to "Frank Gray" and delivered it to Agent Graben, who paid the appellant the sum of $2. This prescription called for 2 oz. sweet oil and ½ oz. laudanum.

On June 7, 1934, Agent Graben again visited appellant in his office, requesting another prescription. Appellant asked "What name will I use today?" and the agent gave him the name "John Harrison" of Aberdeen, Wash. Appellant stated he would have to have a street number or hotel address. The agent suggested "Colby Hotel" as an address, but appellant refused to use that address again and stated he would make .it "Rte. 1, Aberdeen, Wash." Appellant then wrote a prescription to "John Harrison, Rte. 1, Aberdeen, Wash.," calling for 2 oz. sweet oil and ½ oz. laudanum, with the directions "5 drops warmed and dropped in ear for pain." Appellant then handed Graben this prescription and Graben paid appellant two $1 bills, the serial numbers of which had previously been noted. Graben delivered this prescription to his superior, Mr. Williamson, but the prescription was not filled.

Agent Williamson interviewed appellant with relation to the prescriptions of laudanum and sweet oil and obtained from the appellant the two $1 marked bills. As a witness for the government, he testified: "I have been in the service of the United States for twenty-three years, and. ever since the passage of the Harrison Narcotic Act, have been in that branch of the service. Before that, I was a registered druggist and had a number of years experience as such." He then went on to say:

"Laudanum is a tincture of opium. A half ounce of laudanum contains twenty-two and a half grains of opium. That amount of opium contains about ten per cent morphine, so that each of these prescriptions contained twenty-two and one-half grains of opium, included in which was about two and one-half grains of morphine. This compound was not in the form in which addicts usually use narcotics, but I think that some addicts could run off the sweet oil, thus extracting the opium.

"An addict could not use this compound as it was but if the sweet oil was abstracted from the compound the residue could be subjected to heat causing the evaporation of the alcohol content and the residue would be principally opium which could then be put into solution and used hypodermically. This is not the usual practice, but it can be done."

Appellant testified with reference to the prescription issued on May 29, 1934, which he identified as Government's Exhibit No. 1, that a woman who gave her name as "Ellen Gray" came to his office complaining of ear trouble and after an examination, which revealed an ear disease, he issued her a prescription, above referred to; that she paid the appellant the sum of $2 for the prescription. Appellant stated that he did not issue this prescription to Walter G. Graben and that Graben was not present.

In connection with the prescription issued June 1, 1934, appellant testified a stranger, who gave his name to be "Frank Gray," came to his office, whom he did not recognize at the time of trial as Walter G. Graben. The patient complained of ear trouble and requested appellant to prescribe for it. After an examination, which disclosed that the ear was in an inflamed condition, appellant issued him the prescription referred to as Government's Exhibit No. 2. Appellant received the sum of $2 for this prescription.

Appellant further testified that on June 7, 1934, a man whom he recognized at the time of trial as the government's witness, Walter G. Graben, visited his office and gave his name as "John Harrison," stating that he was suffering from earache and requesting a prescription of laudanum and sweet oil. After an examination, disclosing an inflamed condition of the ear, appellant issued the prescription to "John Harrison," in reality Walter G. Graben, for ½ oz. laudanum compounded with 2 oz.

sweet oil, with directions "5 drops warmed and dropped in ear for pain." Appellant identified this prescription as Government's Exhibit No. 3, and testified that he received two $1 bills in payment, delivering both bills a short time later to government's witness, Mr. Williamson.

During the cross-examination of appellant, he was subjected to interrogatories in the course of which the following occurred:

"Q. In your practise do you make duplications of all prescriptions issued by yourself? A. I do.

"Q. Do the papers and other matters on your counsel table represent such duplicate prescriptions? A. They do.

"Q. Since February 18, 1933, have you not issued 107 prescriptions for laudanum and sweet oil, up to this time, that were filled at Heikel's Drug Store?

"Mr. Abel: Objected to as not cross examination.

"The Court: Objection sustained.

"Mr. Hughes: During that period from February 18, 1933, to June 7, 1934, have you not issued 107 prescriptions for laudanum and sweet oil?

"Mr. Abel: I object as not cross examination, involving collateral issues, and matters not charged as a crime, and is not limited in date prior to the date stated in the last count.

"The Court: Objection overruled. Exception allowed.

"A. It was not that many.

"Q. Well, how many was it? A. I can't give you the number, for I have not counted.

"Q. Have you the duplicates of those prescriptions there?

"Mr. Abel: I object to the inquiry as not cross-examination, improper, as an attempt to make the witness produce evidence against himself and incriminate himself upon collateral matters respecting which there was no direct examination.

"The Court: Objection overruled. The inquiry is proper as bearing upon the intent with which the prescriptions involved in Counts I and II were issued. Exception allowed to defendant.

"A. I have the duplicates of some of the prescriptions here.

"Q. Where are the others? A. They are at home in my records.

"Q. Why didn't you bring or include all of the duplicate prescriptions issued for laudanum and sweet oil with those prescriptions you have brought here?

"Mr. Abel: Objected to as improper cross examination, extremely prejudicial to the defendant to require him to excuse the non-production of said prescriptions, and tending to require the defendant to incriminate himself, or excuse and explain acts not involved in this case, and not proper cross-examination.

"The Court: Objection overruled. Exception allowed defendant.

"A. I did not think that I would need them, or that I would be called on to testify concerning them.

"Q. Where are they? A. At my home in Aberdeen, but you understand that I could not get them now in time for this trial.

"Q. Well, please produce the prescriptions that you have here.

"Mr. Abel: I object to the demand in the presence of the jury that defendant produce any prescriptions whatever. Such prescriptions are not involved in this case, the inquiry is not cross examination, but is collateral. It is requiring the defendant to produce evidence against himself upon matters respecting which the implication is that they tend to establish other crimes. As such the inquiry is improper.

"The Court: Objection overruled. Defendant is allowed an exception.

"Mr. Abel: Your Honor, to preserve the constitutional rights of the defendant, as I understand them to be, I feel impelled to instruct the witness not to produce said other prescriptions, and to refuse the request or demand of the prosecution. I do not wish to be placed in the attitude of disobeying the court's instruction, or to be in contempt of court, for I have never been fined for contempt of court yet—

"The Court: The court has not so far ever fined anyone for contempt of court.

"Mr. Abel: Under the circumstances, I again decline to produce for my client any prescriptions respecting which inquiry is made on cross examination.

"Mr. Hughes (resuming cross examination): You are now shown eight prescriptions purporting to have been issued by you to one Jack Wilson, or John Wilson. Do you identify these prescriptions as having been issued by you, the first one bears

date March 18, 1933, and the last of them June 9, 1933, all prescribing sweet oil and laudanum?

"Mr. Abel: I object to the identification thereof by the witness, and the statement of counsel, as not cross-examination, tending to show other acts remote in time, respecting which the defendant should not be required to make any explanation, the implication of the prosecution being that other offenses have been committed by defendant.

"The Court: Objection overruled, exception allowed defendant.

"A. Yes, I identify each of said prescriptions, and issued them to Jack Wilson.

"Q. Why did you issue them to him?

"Mr. Abel: Same objection, not proper cross examination, and requiring the defendant to justify himself from collateral acts and matters not here involved.

"The Court: Objection overruled. Exception allowed.

"A. I was treating him for a bad case of ear trouble, and issued these prescriptions for him in the treatment of his disease.

"Mr. Hughes: That is all.

"Mr. Abel: That is all on the subject. I now move to strike all of the cross examination of the defendant respecting his prior practice in issuing prescriptions for laudanum and sweet oil, including the alleged 107 prescriptions and eight prescriptions to Jack Wilson or John Wilson; the entire subject is outside the limits of cross examination. It placed the defendant in the position of having to explain matters not in issue, respecting which he did not testify to at all, it placed him in the dilemma of refusing an improper demand or otherwise compelling him to incriminate himself upon matters not in issue. I request that the jury be instructed to disregard all testimony on cross examination of Dr. Mac-Lafferty upon the subject.

"The Court: Objection overruled and motion denied. Exception allowed to the defendant."

In relation to the testimony on issuance by appellant of other laudanum prescriptions, the court was requested by appellant to give the following instructions:

"Instruction No. 8.

"Evidence of previous sales or prescriptions by the defendant has been testified to by certain witnesses. You are to carefully limit the effect of such testimony of other sales or other prescriptions, and the same is only to be considered by you to the extent, and only to the extent, that such other prescriptions show light upon the intent with which the defendant made the three sales or three prescriptions which are the basis of the three counts in the indictment.

"If in any instance the defendant issued a prescription for laudanum and sweet oil for the alleviation of pain or the treatment of ear trouble, the issuance of such a prescription is no evidence of anything.

"Instruction No. 9.

"It has been shown by evidence, and it is admitted by the defendant, that on prior occasions he issued prescriptions containing laudanum. This testimony was admitted as bearing upon the intent with which the defendant issued the three prescriptions involved in the three counts of the indictment. You are not to convict the defendant because of the issuance of prior prescriptions. He is not on trial for having issued said prior prescriptions. Nor is the issuance of said other prescriptions to be considered by you as evidence that they were issued improperly or criminally.

"Unless the Government satisfies you beyond a reasonable doubt that said other prescriptions or some of them were not issued in the bona fide practice of the defendant's profession, they are to be wholly disregarded by you.

"Instruction No. 10.

"Evidence has been introduced on behalf of the Government to show that on previous occasions, the defendant prescribed laudanum and sweet oil for ear pains or ear trouble. These previous prescriptions are not to be considered by you as evidence unless the Government has proved beyond a reasonable doubt that such previous prescriptions, or some of them, were issued by the defendant in the bona fide practice of his profession as a doctor. That is to say, the Government must establish beyond a reasonable doubt that such previous practice by the defendant was criminal in respect to the prescribing of laudanum or morphine. If such previous practice was criminal then you are only to consider it as bearing upon whether the three prescriptions involved in the three counts were issued by the defendant in the bona fide practice of medicine or were issued to satisfy the supposed or real cravings of an addict.

"Thus the burden is upon the Government to show that such previous prescriptions were not proper practice, and were criminal acts of the defendant. If such previous prescriptions were proper practice, they are not evidence against the defendant at all, and as stated, the Government must prove beyond a reasonable doubt that they were not proper practice, and that they were criminal acts in themselves. But you are to remember that the defendant is not on trial in respect of any of said other prescriptions, and that the Court has allowed such previous prescriptions to be shown only as bearing on whether the prescriptions involved in the three counts were issued bona fide or criminally."

The court refused to give each of these proposed instructions. An exception was taken to such refusal. In lieu of said instructions the court instructed the jury as follows:

"It has been admitted by the defendant, that on prior occasions, he issued prescriptions containing laudanum. This testimony was admitted as bearing upon the intent with which the defendant issued the prescriptions involved in counts one and two in the indictment. He is not on trial for having issued said prior prescriptions.

"You are to carefully limit the effect of such testimony of other sales or other prescriptions, and the same is only to be considered by you to the extent, and only to the extent, that such other prescriptions show the intent with which the defendant made the prescriptions which are the basis of the two counts in the indictment."

It is strenuously contended by appellant that the court erred in overruling objections made to the interrogatories, propounded by appellee as to the issuance of prescriptions other than those named in the indictment. It is admitted that the general rule of evidence is that evidence of other crimes is not admissible, but it is insisted by appellee that these interrogatories are within the well-recognized exception to the general rule, which is that where the prosecution must show a specific intent, evidence of other similar offenses may be used to establish that fact.

The evidence in this case conclusively shows that a prescription of laudanum and sweet oil such as appellant is charged with having delivered to the prosecuting witness in this case was one which was proper in the treatment of ear disease, which has been generally recognized as proper practice for many years. This was admitted by Dr. Morris, a rebuttal witness for the government. Furthermore, all the witnesses who testified concerning the matter, both for the government and for appellant, said that they never had heard of laudanum and sweet oil being used by narcotic addicts to satisfy cravings for drugs. There was also testimony that the amount of opium or morphine in such a prescription would be a very small single dose for the average addict.

The only other prescriptions shown by the evidence to have been issued by appellant were eight issued to one Jack Wilson between March 18, 1933, and June 9, 1933, all prescribing sweet oil and laudanum. Appellant identified said prescriptions and concerning them he said, "I was treating him for a bad case of ear trouble and issued these prescriptions for him in the treatment of his disease." This testimony was uncontradicted.

In view of the fact that all the physicians who testified stated that the prescriptions were proper in treatment for ear trouble; that there was no evidence that Jack Wilson was not a bona fide patient suffering with ear trouble or any showing that he had not been treated for ear trouble by appellant as testified to by him, this case was not in line with those authorities which hold that it is proper to allow evidence of other crimes to establish intent.

We hold that before the evidence in relation to these prescriptions other than the ones described in the indictment could be admitted in evidence it was necessary for the government to show that such other prescriptions or sales were connected with actual violations of the law. The rule to be applied in such cases is set forth in Coulston v. United States (C. C. A. 10) 51 F.(2d) 178, at page 180, cited by appellee, where the court speaks as follows: "In the civil law, and very early in the common law, evidence of other crimes was admitted on the theory that a person who has committed one crime is apt to commit another. The inference is so slight, the unfairness to the defendant so manifest, the difficulty and delay attendant upon trying several cases at one time so great, and the confusion of the jury so likely, that for more than two hundred years it has been the rule that evidence of other crimes is not admissible. Boyd v. United States, 142 U. S. 450, 12 S. Ct. 292, 35 L. Ed. 1077; Hall v. United States, 150 U. S. 76, 14 S. Ct. 22,

37 L. Ed. 1003; Niederluecke v. United States (C. C. A. 8) 21 F.(2d) 511; Cucchia v. United States (C. C. A. 5) 17 F.(2d) 86; Smith v. United States (C. C. A. 9) 10 F. (2d) 787; Wigmore on Evidence (2d Ed.) § 194. Corpus Juris cites cases from forty-four American jurisdictions in support of this rule. 16 C. J. 586. There are many exceptions to the rule, the most common of which is that, if the prosecution must show a specific intent, evidence of other similar offenses may be used to establish that fact."

The particular exceptions here under discussion are noted in Paris v. United States (C. C. A. 8) 260 F. 529, at page 531, where the court, after citing some of the authorities set forth above, declared: "* * * To this general rule there are exceptions. One of them is that, where the criminal intent of the defendant is indispensable to the proof of the offense, proof of his commission of other like offenses at about the same time that he is charged with the commission of the offense for which he is on trial may be received to prove that his act or acts were not innocent or mistaken, but constitute an intentional violation of the law. In cases falling under such an exception to the rule, however, it is essential to the admissibility of evidence of another distinct offense that the proof of the latter offense be plain, clear, and conclusive. Evidence of a vague and uncertain character regarding such an alleged offense is never admissible." (Cases cited.)

Appellee also cites Dysart v. United States (C. C. A. 5), 270 F. 77, but that case sustains the position we take here. In that case the evidence of other transactions was not, as here, "of a vague and uncertain character regarding such an alleged offense" but, as the decision points out (270 F. 77, at page 78), "The evidence shows beyond dispute that plaintiff in error issued within a few months many hundred prescriptions for morphine sulphate to persons addicted to the use of morphine, who came to him, not for medical treatment, but for prescriptions upon which they could secure morphine to satiate their appetites."

The failure of the court to give the instructions requested, or some equivalent statement of the law, was error. The court should have granted the motion to strike the evidence concerning those previous prescriptions, as the evidence failed to connect them with any violation of law.

Reversed.