**UNITED STATES v. HIPSCH et al.**

Nos. 14806, 14906.

District Court, W. D. Missouri, W. D.

Aug. 5, 1940.

Richard K. Phelps, Acting U. S. Atty., and Otto Schmid, and Wm. Orr Sawyers, Asst. U. S. Attys., all of Kansas City, Mo., for plaintiff.

Forest W. Hanna, of Kansas City, Mo., for defendant.

OTIS, District Judge.

Dr. Edward Hipsch, who had waived trial by jury, was found guilty on July 20, 1940, on counts 1, 2, 3, 4 and 5, in case No. 14,806, and on counts 1, 7 and 9 in case No. 14,906. The indictments charged violations of the narcotic laws. On July 24, 1940, Dr. Hipsch was sentenced to imprisonment in an institution of the penitentiary type for two years on each count, the sentences to be served concurrently. His motion for a new trial, which, before imposition of sentence, his counsel announced he did not wish to argue, was overruled. When it was overruled I said I would file, as soon as I could prepare it, a memorandum setting out the legal theories upon which the cases were determined. Although the defendant has now begun serving his sentence it has been announced that there may be an appeal. This memorandum possibly will be of service both to counsel and to any reviewing court.

The Hipsch case has a background. It and companion cases were instituted when agents of the government discovered in a single drug store in Kansas City thousands of prescriptions for morphine which had been issued to notorious addicts during a relatively short period of time. More than five thousand of these prescriptions, upon which more than a hundred thousand tablets of morphine had been procured, had been issued by a Dr. D. M. Nigro, a phy-

sician whose income approached $40,000 a year. Hundreds of prescriptions had been issued by a Dr. Gettleson, hundreds by a Dr. Saper and hundreds by Dr. Hipsch. Also many prescriptions had been issued by a Dr. Hungate.

Indictments were returned by a federal grand jury. In one indictment, No. 14,804, all five of the physicians mentioned were jointly charged with conspiracy to violate the Harrison Anti-Narcotic Act, 26 U.S.C. A. Int.Rev.Code, §§ 2550 et seq., 3220 et seq. All defendants named in that indictment waived trial by jury except Dr. Nigro. Nigro was granted a severance. As to him case No. 14,804 was consolidated with case No. 14,802, charging unlawful sales of morphine. He was found "Guilty" by a jury and sentenced to four years' imprisonment and a fine of $12,000.

Upon a re-indictment, differing in some respects from 14,804, Dr. Gettleson, who asked a jury trial as to the new indictment, was found "Not Guilty". The verdict was fully justified upon the evidence introduced.

Dr. Hungate's offer in compromise was accepted by the Treasury Department and the Department of Justice. Criminal charges against him thereupon were dismissed.

Dr. Saper, thirty-eight years of age, who entered a plea of "Guilty" in case No. 14,-804, and was sentenced to serve a year and a day in an institution of a penitentiary type, was a tragic figure. Poverty held him in its grip. For much of his medical work he received little or no compensation. His patients were poor. Undoubtedly his extreme need led him to yield to temptation. The lenient sentence imposed is explained by these facts and by the fact that immediately on his arrest he confessed his guilt and threw himself upon the mercy of the court.

Dr. Hipsch also was a tragic figure. He was thirty-three years old when he was sentenced. He had been educated and trained for his profession through the great sacrifice of immigrant parents. He had excellent training and fine abilities. At last he opened an office as a specialist in diseases of the ear, nose and throat. He waited for patients to come. Few came. But there was rent to pay. There were installment payments on needed apparatus to be met. And the doctor was desperate to begin supporting himself, that his father at last might be relieved of that burden. So, in the very first months of his professional career, he began to take the easy money narcotic addicts were glad to pay for fake prescriptions. He had been shown by the druggist, who first led him into temptation, hundreds of prescriptions for the same addicts written by the well-known Dr. Nigro. It seemed safe to "play around" (the phrase is that which Dr. Hipsch himself used) with addicts.

Guilt was proved beyond a shadow of doubt. The addicts to whose cravings the accused willingly and freely administered were known to him to be addicts; they told him they were addicts; the "friendly" druggist told him they were addicts; it was written on their faces that they were addicts. But, on their very first visits the doctor prescribed morphine. In each instance the medicine needed was suggested by the patient, not by the physician. If there was any examination of the "patient" it was a farce. If there was any diagnosis it was false. Indeed the true nature of the business he was engaged in was so obvious to Dr. Hipsch that immediately he instructed his new patients not to come to him during office hours. And soon he instructed them not to come to his office at all, he just would leave their prescriptions at the drug store.

Dr. Hipsch was sentenced to two years' imprisonment. His youth, his inexperience, his poverty, the example of what older and financially successful practitioners were doing brazenly and openly, which had been held up before his eyes, all these facts justified a lesser sentence than that which previously had been established as a sort of a standard in the companion case of Nigro. Dr. Hipsch was the last to be sentenced. All others had then been sentenced: Dr. Nigro, Dr. Saper, the druggists (Darling and Schnaer) and two of the addicts (Frank and Irene Conley).

Dr. Hipsch was found "Guilty" of the offense of conspiracy to violate Section 2554 of Title 26 U.S.C.A. Int.Rev.Code (count 1 in case No. 14,906), of two charges of sales of morphine (counts 7 and 9 in case No. 14,906) and of five charges of sales of morphine (counts 1, 2, 3, 4 and 5 in case No. 14,806). I discuss the law in connection with the charge of conspiracy and separately in connection with one charge of sale (one charge being typical of all).

### The Conspiracy

1. The indictment charges, in paragraph 1, that Hipsch, Darling, Schnaer,

Erba Frank Conley, Martha Irene Conley, Clarence Crenshaw and others conspired to violate Section 2554, Title 26 U.S.C.A. Int.Rev.Code, "in the issuing, using and filling of written orders alleged to be narcotic prescriptions and the sale, barter and exchange of narcotic drugs." In paragraph 2 the indictment charges that the conspiracy was,—that "purported," but not good faith, prescriptions for drugs would be written by the physician defendant for narcotic addicts, to enable them "to satisfy their cravings", and that narcotic drugs would be sold upon such "purported" prescriptions. Then follow in the indictment charges of overt acts, including the writing and the filling of numerous narcotic prescriptions.

██ It has not been suggested by any person in any manner that count 1 of the indictment does not charge such a crime as is described in the conspiracy statute. Section 88, Title 18 U.S.C., 18 U.S.C.A. § 88. Therefore only a short paragraph need be devoted to that matter. Section 88 makes it a crime for two or more persons to conspire "to commit any offense against the United States" if one or more of them "do any act to effect the object of the conspiracy." To conspire to bring about a violation of Section 2554, Title 26 U.S.C. A. Int.Rev.Code, certainly is to conspire to commit an offense against the United States. It is not necessary that the conspiracy contemplate that the conspirators or some of them shall themselves directly break the law. It is quite sufficient if the conspiracy contemplates that that shall be done which does violate the law. The word "commit" in the conspiracy statute "means no more than bring about." United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 272, 59 L.Ed. 504, L.R.A. 1915D, 281. No one would doubt that if A conspires with B to induce X to counterfeit money, if either commits an overt act, they have violated the conspiracy statute, although neither A nor B himself counterfeits or intends to counterfeit money.

██ Now the evidence showed clearly these facts: (1) that Dr. Hipsch and the addicts Frank Conley and Irene Conley agreed that Dr. Hipsch would write fake narcotic prescriptions for the Conleys and (2) that the Conleys would present those fake prescriptions to druggists, obtain sales of drugs and so procure drugs to satisfy their addiction. (The evidence also showed, (3), that druggists agreed with

Hipsch and the Conleys to sell the Conleys drugs on fake prescriptions issued by Hipsch, but I disregard that element to the end that I may present the law, as I view it, in the simplest conceivable fact situation).

It seems clear to me that a conspiracy to violate Section 2554 is proved when elements (1) and (2) alone are established. Certainly a sale of morphine by a druggist on a fake prescription is a violation of Section 2554 whether the druggist knew or did not know that the prescription was a fake. The section provides that "It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs mentioned in Section 2550(a), * * *." Such is the essential prohibition of the section. Following that prohibition are set out two exceptions. The first is when the sale is on a written order on an official form (with which exception we are not here concerned). The second exception is where the sale is on a doctor's genuine prescription, not a fake prescription. A sale on a fake prescription is not within either exception and therefore is within the prohibition. If two or more conspire to procure such a sale, they conspire to bring about a violation of Section 2554, that is, they conspire to commit an offense against the United States. The innocence of the druggist does not affect the unlawful character of sale on and by a fake prescription. Manning v. United States, 8 Cir., 31 F.2d 911, 913.

### The Sale Counts

2. In each of the counts charging sales of morphine by the defendant the indictment alleged only (Count 2 in case No. 14,906 is used for illustration) "that Edward Hipsch M. D. * * * did on the 9th day of March 1939 at 1017½ Grand Avenue, Kansas City, Jackson County, Missouri, in the Western Division of the Western District of Missouri, unlawfully, wilfully, knowingly and feloniously sell to one Clarence Crenshaw 12 grains of morphine sulphate a derivative of opium, the same not then and there being sold in pursuance of a written order of the said Clarence Crenshaw on a form issued in blank for that purpose by the Commissioner of Internal Revenue of the United States."

The indictment is in stereotyped form and no attack was or has been made upon it.

■■ There was no proof and no suggestion that Dr. Hipsch had sold Crenshaw morphine after the ordinary manner of sale. The proof was only that he had written a fake prescription for Crenshaw. But the Eighth Circuit Court of Appeals definitely has ruled that a physician who writes a fake prescription and gives it for a price to an addict to enable him to procure morphine has made a sale of morphine, when the prescription is filled, even although the druggist is altogether innocent. Manning v. United States, supra.[1] The holding is logical and sound. An analogy would be this: A, knowing X is concealed behind a bush and intending to kill X, induces B, who does not know X is behind the bush, to fire a rifle into the bush. The rifle is fired. X is killed. B is guilty of nothing. But would any one say A is not guilty of a crime? So if A tricks a druggist into selling morphine by sending him a fake prescription, the Court of Appeals is right in saying that A has made a sale of morphine.

It may be helpful if Manning v. United States is sufficiently discussed that its full significance may be understood. Dr. Manning had been sentenced on each of 29 counts of an indictment to a total imprisonment of 10 years. The only question reviewed by the Court of Appeals was the sufficiency of the indictment. The indictment was held good and the conviction was upheld.

A typical count of the indictment in the Manning case is set out in the opinion. As in the case of the indictment in the present case (except that it names a different vendee) it charged that Manning "did * * * sell * * * to one Ella Rush * * * morphine sulphate, not in pursuance of any written order * * *." [31 F.2d 912.] The indictment then alleges in detail in what manner the sale was made (in substance that it was by writing a fake prescription for an addict with the intention that it should be filled by some druggist). The essence of the opinion is that the facts alleged, if proved, prove an unlawful sale of morphine by the physician writing the fake prescription, as one who "takes a principal part in the prohibited sale" and that that conclusion is not affected by the fact that the druggist may be "innocent" and "protected by the prescription."

Neither the Court of Appeals for the Eighth Circuit nor the Supreme Court nor any federal appellate tribunal ever has criticized the conclusion reached in the Manning case.

I have set out here my views of the law governing this case and the grounds upon which the sentence was bottomed and the motion for a new trial overruled.

[1] Manning v. United States had not been called to my attention when the case of United States v. Nigro was tried. In my charge to the jury in that case I imposed a much heavier burden on the government than was justified under the law. I required the government to prove beyond a reasonable doubt not only that the physician had written fake prescriptions for addicts and that they had been filled but, also, that the druggist filling them knew they were fake prescriptions.