## UNITED STATES v. ABDALLAH.
### No. 290.

Circuit Court of Appeals, Second Circuit.
May 2, 1945.

Charles Wilson, of Brooklyn, N. Y., for defendant-appellant.

Mario Pittoni, Asst. U. S. Atty., of Brooklyn, N. Y. (T. Vincent Quinn, U. S. Atty., and Vine H. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

■ This is an appeal by a physician, in practice since 1917, from conviction by a jury and concurring sentences of imprisonment on three counts of violating 26 U.S.C.A. Int.Rev.Code, § 2554 (a), by selling morphine without a written order on a form issued for that purpose by the Secretary of the Treasury. The unlawful acts of which he was found guilty consisted of the issuance of prescriptions of the drug to an addict. The government's contention here is the same as that upheld by us in United States v. Lindenfeld, 2 Cir., 142 F. 2d 829, certiorari denied Lindenfeld v. United States, 65 S.Ct. 89, that by such acts defendant removes himself from the protection of 26 U.S.C.A. Int.Rev.Code, § 2554 (c) (1), which excepts from the general mandate of subdivision (a) the distribution of drugs "by a physician * * * in the course of his professional practice only." Defendant urges us to reconsider our holding in the Lindenfeld case that the question as to whether the defendant comes within the exception was one of fact as to his good faith, for the jury to decide, and contends that there must be a consent or conspiracy between the physician and the druggist filling the prescription in order to render the physician's acts unlawful. But our holding was not at all novel, and we find no occasion for reconsidering it. We therefore discuss only the remaining issues urged on this appeal.

The case for the prosecution showed that in March, 1943, Agent Tagley of the United States Narcotic Squad made several trips to the vicinity of defendant's office with a drug addict and government informer, John Port. Tagley searched Port thoroughly, found nothing on him, and then gave him money. Each time Port came out with a prescription or prescriptions for morphine, in combination with ephedrine, which he promptly turned over to Tagley. Tagley then drove him to the vicinity of the Welch Pharmacy in the Bronx, where the prescriptions were filled. The amount of prescriptions varied with the amount of money Tagley gave Port. This happened on six different occasions from March 10 to March 30, 1943, each occasion being the subject of a different count of the indictment. On each of the last three occasions defendant gave Port several postdated prescriptions. The jury found defendant guilty on the three counts covering these last occasions, while it freed him on the counts covering the earlier transactions.

Though the government's case was sharply contested, there was substantial evidence pointing to defendant's guilt. While it does appear that defendant examined Port at least once, and that the latter complained of asthma, it seems that during the course of the examination defendant made Port strip to the waist, that Port had needle marks on his arm, which defendant must have noticed and which ought to have put him on guard as to Port's addiction. Moreover, Port testified that defendant accused him of being an addict, but nevertheless issued the prescriptions; that defendant warned him not to fill the prescriptions with one druggist, not to carry the bottles on his person, and to tear the labels off the bottles; and that defendant urged him to supply a friend in whose name future prescriptions could be made out. There was further evidence to show that Port never had asthma, and that defendant was well aware that morphine is not a specific remedy and should be used only in extreme cases to quiet a person with loss of sleep and then only with great caution. And it was thus undisputed that Port obtained 12 prescriptions for morphine on 6 visits within a period of 20 days.

On Port's last visit, March 30, 1943, he was given marked money, which defendant turned over to the agents upon being arrested. The agents then asked him where he kept his records, as required by 26 U.S.C.A. Int.Rev.Code, § 2554 (c) (1), showing the patients to whom he had prescribed drugs. But defendant claimed he had kept none. True, he introduced his diary at his trial; but this appears to show discrepancies from the prescriptions in evidence. A spot check of drugstores in defendant's vicinity turned up 115 narcotic prescriptions by defendant, most of which were issued after September 1, 1942, and of which 50 were issued to one person, DeRosa.

From this evidence the jury was clearly entitled to infer defendant's bad faith. As a matter of fact, it seems to have exercised discrimination in its verdict, giving defendant the benefit of all possible doubt on the three earlier counts, while finding guilt on only the latter three, where bad faith seems undeniable. Defendant contends, however, that the government failed to prove the filling of the prescriptions, a necessary element of the sale of narcotics as here charged. Strader v. United States, 10 Cir., 72 F.2d 589, 590; United States v. Lindenfeld, supra, 2 Cir., 142 F.2d 829, at page 832, n. 1. The evidence is contradictory as to whether the druggist filled the prescriptions according to directions, including ephedrine sulphate and milk sugar, or whether Port obtained from him pure morphine sulphate instead. But as long as acquisition of the opiate as a result of the prescription is shown, we think it cannot excuse the wrongful act that the druggist does not fulfill the directions precisely or even takes advantage of the opportunity to expand the illegal traffic. For in either event the prescription is the instrument leading to the completion of the crime. Obviously the interest of the druggist is to obtain a seemingly legitimate basis for rapid depletion of his morphine stock; and the doctor has furnished it by his prescription, whether it be followed to the letter or not. With its purpose thus fulfilled, the crime is complete.

Defendant urges, however, that here the crime was completed through the agency of a decoy and detective, whose acts cannot be imputed to defendant so as to render him guilty of the offense charged. In support of his contention, he relies on cases such as People v. Lanzit, 70 Cal.App. 498, 233 P. 816; Dalton v. State, 113 Ga. 1037, 39 S.E. 468; State v. Decker, 321 Mo. 1163, 14 S.W.2d 617; Williams v. Georgia, 55 Ga. 391; and De Mayo v. United States, 8 Cir., 32 F.2d 472. We need not stop to consider how far this principle may be soundly pressed, since all that these cases stand for is that acts done by a detective in building up the commission of an offense cannot be imputed to a defendant. They do not determine or limit the participants in steps leading to the completion of the offense once it is shown to have been committed. Here the crucial act was committed once the prescriptions were issued. The filling of the prescriptions merely carries the act to the final point where it becomes punishable as the crime in question. Thus the administering of poison may not constitute murder until the victim perishes; but once this occurs, the act of administering constitutes the offense. And the crucial act of issuance of the prescriptions was one not performed by the detective or decoy, but by the defendant of his own volition and intent. United States v. Lindenfeld, supra; Nigro v. United States, 8 Cir., 117 F.2d 624, 631, and cases cited, 133 A.L.R. 1128; Manning v. United States, 8 Cir., 31 F.2d 911; United States v. Hipsch, D.C. W.D.Mo., 34 F.Supp. 270.

This also disposes of defendant's objection to his conviction on the last count, for issuing prescriptions which were not filled until after his arrest. Nor do we find merit in his further contention of entrapment. As said in United States v. Lindenfeld, supra, 2 Cir., 142 F.2d 829, 831, "Entrapment exists only when the government agents induce and originate the criminal intent of a defendant; there is none where the criminal intent is already present, and the agents merely afford the opportunity for the commission of a crime." Despite defendant's claim of having been duped by Port, the court's proper charge on the question and the jury's verdict negative the existence of the defense.[1]

---

[1] Defendant argues that there must be reasonable cause for suspicion before a detective may give the culprit an opportunity to commit the crime, citing cases such as De Mayo v. United States, 8 Cir., 32 F.2d 472, 474, 475; Fisk v. United States, 6 Cir., 279 F. 12; Partan v. United States, 9 Cir., 261 F. 515, certiorari denied 251 U.S. 561, 40 S.Ct. 220, 64 L. Ed. 415; United States v. Reisenweber, 2 Cir., 288 F. 520. These cases, however, use facts showing "reasonable

Defendant objected to rebuttal testimony from Port to the effect that needle marks on his arm were about the same number and color as in March, 1943, and a showing of his arm and the marks to the jury; he also made a motion for a mistrial because of the exhibition of the arm. So far as this testimony was received in rebuttal, instead of in chief, the ruling was well within the court's discretion. And it was surely relevant to the issues, particularly in the light of the defendant's testimony that he examined Port to see if the latter was an addict without ascertaining that he was. The objection that the exhibition was "hideous and gruesome" is, indeed, strained.

Defendant objects to the admission in evidence of the 115 prescriptions for narcotics issued by him and found upon a spot check of drugstores in the neighborhood. They were competent and relevant evidence on the question of good faith of the present transaction; and as such they are not barred, even if they tended to establish offenses other than the one with which defendant was charged. Strader v. United States, supra, 10 Cir., 72 F.2d 589, 591, and cases cited; Baish v. United States, 10 Cir., 90 F.2d 988, 990, and cases cited; Witters v. United States, 70 App. D.C. 316, 106 F.2d 837, 839, 840, and cases cited, 125 A.L.R. 1031. MacLafferty v. United States, 9 Cir., 77 F.2d 715, relied on by defendant, does not support him. For there, there was a definite showing that the issuance of the other prescription was lawful, while here a great deal indicated that the prescriptions were unlawfully issued, which made them proper evidence of bad faith. Thus, in the MacLafferty case physicians testified that the prescriptions were proper for treatment of the illness involved, while here the prescriptions ran counter to the clear testimony of Dr. O'Connor, and statements in Dr. Cecil's work, that morphine should not be prescribed for asthma except in extreme cases. Cross-examination of defendant, who had voluntarily taken the stand, concerning the suspiciously large number of the DeRosa prescriptions was proper under the circumstances. Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704; Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. Finally the testimony of the government's expert, Dr. O'Connor, as to Port's physical condition upon examination in February, 1944, seems unobjectionable in view of the testimony as to the chronic nature of asthma, certainly in the absence of any objection or exception.

Affirmed.

cause" as evidentiary of an already existing criminal intent upon the part of the accused, rather than as an absolute prerequisite to the police practice here involved. In fact the government here attempted to introduce evidence as to reasonable cause, but such evidence was excluded on defendant's objections. Moreover, evidence that defendant had continuously engaged in similar activities was introduced in the form of the 115 prescriptions obtained from the neighboring drugstores. Such evidence fulfills the same evidentiary function as does proof of "reasonable cause." United States v. Becker, 2 Cir., 62 F.2d 1007; Weiderman v. United States, 8 Cir., 10 F.2d 745.